[Crim. No. 32444, Second Dist., Div. Two. Nov. 30, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT ANDRADE, Defendant and Respondent.

964

**COUNSEL**

C. Stanley Trom, District Attorney, and Bruce A. Clark, Deputy District Attorney, for Plaintiff and Appellant.

Richard E. Erwin, Public Defender, Kenneth Cleaver, Assistant Public Defender, and Bruce G. Jones, Deputy Public Defender, for Defendant and Respondent.

## OPINION

## BEACH, J.—

### NATURE OF CASE:

The People appeal an order dismissing a charge of manslaughter against the defendant (respondent) after he pleaded guilty to a separate charge of being a felon in possession of a firearm.

### FACTS:

On October 22, 1977, respondent went to a residence in El Rio, California. At the residence Jimmy Villa, the victim, was in the bathroom preparing a costume for a Halloween party that night. Villa was bending over attaching the costume to his legs. The respondent entered the bathroom and stood facing Villa. Apparently, the respondent then pointed a handgun at Villa. When Villa saw the gun, he reached toward the respondent's gun. Respondent said "Watch out. It's loaded." During Villa's reach for the gun, it discharged fatally wounding Villa.

Respondent was charged with murder. At the preliminary hearing the sole witness described the above recited facts. The magistrate held respondent to answer to the lesser included offense of manslaughter. An information was filed in superior court charging respondent with manslaughter. Three days after that the People filed a complaint in municipal court charging respondent with being a felon in possession of a firearm. (Pen. Code, § 12021.) Respondent waived preliminary hearing on that charge and a separate information was filed against respondent in superior court. On the same date as the filing of that information charging respondent with possession, the People moved to consolidate the possession charge with the previous manslaughter case. The next day respondent pleaded guilty to the possession charge. The People again requested consolidation of the two cases and requested that the sentencing be delayed until after the manslaughter trial. After the defendant was sentenced the trial court thereupon declared that the motion to consolidate was moot.

When the manslaughter charge came to trial, respondent moved the trial court to dismiss. Although respondent orally argued delay in trial and harassment, the specific basis of the motion was prohibition against multiple prosecution (Pen. Code, § 654). Respondent relied upon and

cited *Kellett* v. *Superior Court,* 63 Cal.2d 822 [48 Cal.Rptr. 366, 409 P.2d 206]. The trial court dismissed the manslaughter charge. The People appeal, as permitted under Penal Code section 1238, subdivision (a)(8).

## CONTENTION ON APPEAL:

The People contend that there were two distinct criminal acts involved in the two charges against respondent hence a plea of guilty to one of the two offenses does not preclude either punishment or prosecution for the remaining offense.

## THE ISSUE:

Did the prohibition against multiple punishment and multiple prosecution for the same act authorize the trial court to dismiss the manslaughter charge?

## OUR HOLDING:

We hold that the court was not so authorized by that prohibition and we reverse the judgment.

## DISCUSSION:

There are basically three possible sources of authority upon which the court might have acted: (1) the prohibition against multiple punishment or prosecution (Pen. Code, § 654), (2) the right to speedy trial (Pen. Code, § 1382), and (3) the power of a court to dismiss an action in the furtherance of justice (Pen. Code, § 1385).

Although the respondent's motion to the trial court was based on item 1 above, the arguments to the trial court and the trial court's discussion as well as the arguments on appeal also touch upon items 2 and 3. We therefore discuss each in turn.

1. *The prohibition against multiple punishment or multiple prosecution under Penal Code section 654.*

Section 654 of the Penal Code provides: "An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence

under either one bars a prosecution for the same act or omission under any other."

▇ The prohibition against multiple punishment and multiple prosecution did not require the dismissal of the manslaughter action as a matter of law. Here unlike the case of *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, at the time that the People filed the subsequent possession charge, the People moved to consolidate the two matters. That motion was appropriate under Penal Code section 954 and the motion should have been granted immediately. It was a good faith effort by the People to prevent multiple prosecution. In *Kellett* v. *Superior Court, supra,* 63 Cal.2d 822, the defendant pleaded to the misdemeanor of exhibiting a firearm under Penal Code section 417. The Supreme Court prohibited further trial on the possession charge to prevent the subsequent and multiple prosecution of an unconsolidated charge of being a felon in possession of a weapon. In *Kellett* there was no effort by the People to consolidate the two charges.

Further reasons why the case at bench should not have been dismissed are recognized by *Kellett* by the following discussion:

"Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. (*Neal* v. *State of California,* 55 Cal.2d 11, 19 . . . .)

"Penal Code section 954 provides for the joinder in a single accusatory pleading of two or more offenses connected in their commission or having a common element of substantial importance in their commission. (*People* v. *Scott,* 24 Cal.2d 774, 778-779 . . . .) Had both offenses been joined in a single prosecution, the People might have shown that the object and intent of the petitioner in brandishing the weapon and his object in possessing it were entirely unrelated. The People might also have shown that the petitioner's possession of the weapon extended to a time beyond that during which he was observed brandishing it. If both were proved, the tests set forth in *Neal* for distinguishing a divisible transaction would be met and punishment for each offense permitted." (*Kellett, supra,* 63 Cal.2d at pp. 824-825.)

At bench the case before the trial court presented the same possibility described in *Kellett* of the presence of reasons why prosecution of the two charges should be permitted. Here also the People might have shown that

there were two different and prosecutable acts, had joinder been permitted as requested. ■■■ Obvious tactical maneuverings by a defendant should not be permitted to defeat not only the right but the duty of the People to prosecute two separate offenses. The plea by the defendant was an effort to escape prosecution by intentionally creating the seemingly same procedural situation present in *Kellett.* The defendant acknowledged relying on *Kellett* as the basis of his pleading guilty to one offense for the *purpose* of having the other offense dismissed.

■■■ Where the People are endeavoring to join the prosecution of two related offenses, the interposing of a guilty plea to one does not alone justify the denial to consolidate the matters nor does *Kellett* compel the dismissal of the remaining charge under such circumstances. The true posture of this case is different than the apparent *Kellett*-like situation which defendant tried to create. ■■■ While a defendant has the right immediately to plead when charged, here defendant knew at the time of his plea to the possession charge that the manslaughter charge was still pending and that the People had previously requested permission of the trial court to consolidate the two matters. He thus voluntarily created the aspect of two separate cases and the appearance of "multiple prosecution."

It is the duty of the district attorney to charge all separate and punishable offenses committed by a defendant. A plea to one offense cannot bar prosecution for another charged offense merely because somehow they may be related in time or method of commission. (*People v. Smith,* 53 Cal.App.3d 655 [126 Cal.Rptr. 195].) At bench there was an effort to consolidate rather than a failure by the People to consolidate as the court held was the case in *Kellett.*

*Kellett* significantly observed that cases may also arise in which the district attorney is reasonably unaware of the felonies when the misdemeanors are prosecuted. Accordingly, the court cautioned: "In such situations the risk that there may be waste and harassment through both a misdemeanor and felony prosecution may be outweighed by the risk that a defendant guilty of a felony may escape proper punishment. Accordingly, in such cases section 654 does not bar a subsequent felony prosecution except to the extent that such prosecution is barred by that section's preclusion of multiple punishment." (*Kellett, supra,* 63 Cal.2d at p. 828.) That same reasoning applies to the case at bench involving two serious felonies but one of which may be much more serious than the one to which the defendant has pleaded.

 It is apparent from the record that all of the evidence, necessary to prove clearly whether as a matter of law the possession of the weapon and manslaughter were one and the same act, had not yet been presented to the trial court. As illustrated in *Kellett,* the trial court here did not hear all of the evidence that possibly could have been produced on the issue in the manslaughter charge. For example, there was no evidence that the possession did or did not extend well beyond the time of the manslaughter. Nor was there evidence that the intent and objective of the respondent were one thing for the purpose of possessing the gun and were something different for the purpose of his conduct resulting in manslaughter. In other words only after full presentation of the evidence at trial could it have been determined whether the two crimes were or were not "one act." Only after that had been decided, i.e., that it was one act, would subsequent prosecution as well as double punishment be prohibited. The lawful opportunity to present such facts was denied the People.

The fact that such determination would have been made after trial would not have subjected respondent to two prosecutions through trial. There would have been only one trial with offenses consolidated. The People were not attempting subsequent prosecution; they sought only concurrent prosecution of the two separate offenses.

 Moreover, subsequent prosecution is not itself prohibited even if the act proves to be one and the same for purposes of Penal Code section 654. The section precludes subsequent prosecution only when there has been a conviction *and sentence.* Here at the time of the People's request to consolidate, respondent had not been sentenced.

*Kellett* involved a misdemeanor of brandishing a gun in violation of Penal Code section 417, a misdemeanor. This misdemeanor does not involve much more than a possession. Arguably perhaps it is but a dangerous form of possession. Thus the identity of the two legal offenses as arising from but a single act as in *Kellett* is easier to recognize than any similarity of the two different acts here, i.e., (1) felonious possession and (2) actual firing, albeit criminally negligent rather than intentional. But our decision depends little if at all on this possible distinction. More importantly our decision rests upon the single fact that the People were not given the opportunity to present all of the facts possibly available to them regarding the killing. Without all of the facts the trial court was not in a position to apply any of the legal litmus paper which the decided cases have furnished, and by which to determine whether there were two or only one punishable offense.

■ There is no single test for determining whether two or more offenses legally constitute but one act within the meaning of section 654. Even in the case of a felon possessing a firearm and committing an offense with that firearm the answer "depends upon the facts and evidence of each individual case." (*People* v. *Venegas,* 10 Cal.App.3d 814, 821 [89 Cal.Rptr. 103].) The inquiry in each case is to find out what was the defendant's "intent and objective." (*Neal* v. *State of California,* 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *McFarland,* 58 Cal.2d 748; *People* v. *Bradford,* 17 Cal.3d 8 [130 Cal.Rptr. 129, 549 P.2d 1225]; *People* v. *Venegas, supra,* 10 Cal.App.3d 814.) We do not here attempt to discuss the validity of the "intent and objective" test for the purpose of the operation of Penal Code section 654. It is not necessary for us to determine whether the matter at bench was or was not one act. ■ We simply hold that there was not sufficient opportunity given to the People to present all of the evidence reasonably available to show that the conduct of defendant was two separate acts. Thus the trial court did not have sufficient evidence upon which to conclude that there was but one act in legal contemplation. For example, neither of the charges in the present case is a lesser included offense to the other which would bar prosecution as a matter of law. (See *People* v. *Smith, supra,* 53 Cal.App.3d 655.)

2. *The right to a speedy trial under Penal Code section 1382.*

Penal Code section 1382 provides in part applicable here: "The court unless good cause to the contrary is shown must order the action to be dismissed in the following cases: . . . 2. When a defendant is not brought to trial in a superior court within 60 days after the finding of the indictment or filing of the information . . . ."

■ There was no undue delay of trial generally or specifically under the 60-day enjoinder of Penal Code section 1382. The matter was set for trial on approximately the 54th day after the filing of the information. On that date, there were no courts available and the matter was trailed. On the 60th day the court found good cause for continuance based upon an affidavit presented to it. That finding was proper. (*People* v. *Superior Court (Lerma),* 48 Cal.App.3d 1003 [122 Cal.Rptr. 267].) The affidavit showed death in the family of the deputy district attorney prosecuting the action, combined with the fact that the same deputy was still engaged in another trial, and combined also with the unavailability of a court and judge. The record discloses sufficient evidence of good cause to continue the matter and a reasonable continuance. (In accord, see, *People* v.

*Superior Court (Lerma), supra,* 48 Cal.App.3d 1003, and cases therein upholding delay on these grounds.) The trial court itself recognized that it had previously found good cause to continue the matter and expressly stated on the date of hearing defendant's motion for dismissal, that it could not subsequently use delay of trial as a reason to dismiss. The court thus expressly rejected delay as a ground for dismissal. It follows that a dismissal pursuant to Penal Code section 1382 would not have been warranted and cannot support the dismissal at bench.

3. *Authority to dismiss pursuant to Penal Code section 1385.*

Irrespective of the fact that neither Penal Code section 1382 (speedy trial) nor Penal Code section 654 (double punishment prohibition) compelled as a matter of law that the trial court dismiss the manslaughter action, we must still examine the dismissal in the light of Penal Code section 1385. That section in part here applicable reads: "The court may, either of its own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed. The reasons for the dismissal must be set forth in an order entered upon the minutes. . . ."

The result to be reached from the record before us is uncertain. Whether it can support the order of dismissal is doubtful. The record discloses several reasons why the authority of Penal Code section 1385 cannot be invoked in support of this dismissal. We discuss them as (a), (b), and (c):

(a) *Penal Code section 1385 does not provide for a defendant's motion.*

■ The motion which was made and granted was that of defendant not that of the trial court. The statute makes no provisions for a defendant to move for dismissal. (*People* v. *Peinado,* 67 Cal.App.3d Supp. 1, 11 [136 Cal.Rptr. 845]; *People* v. *Taylor,* 67 Cal.App.3d 403 [136 Cal.Rptr. 640].) Although without statutory provision, the trial court expressly accepted, considered, and granted defendant's motion to dismiss. To recognize such motion and order would judicially enlarge the scope of Penal Code section 1385 if the dismissal were intended in furtherance of justice. The Legislature limited the right to initiate the use of the authority of section 1385 to the People and to the court. Granting a defendant's motion cannot be properly characterized as a dismissal of charges in furtherance of justice as authorized by Penal Code section 1385. (*People* v. *Smith, supra,* 53 Cal.App.3d 655, 658; *People* v. *Peinado,*

*supra,* 67 Cal.App.3d Supp. 1, 11; *People* v. *Taylor, supra,* 67 Cal.App.3d 403; *People* v. *Shaffer,* 182 Cal.App.2d 39 [5 Cal.Rptr. 844]; *People* v. *Ellis,* 204 Cal. 39 [266 P. 518].)

The reporter's transcript shows that in the oral pronouncement the trial court stated that among several matters, it considered "my own power." Even if we assume the trial court was referring to its authority under section 1385, the remarks tell us only that the trial court considered that authority. It does not tell us that it in fact was exercising its authority under and specifically basing its order upon that authority contained in section 1385. The minutes reflect only that defendant's motion to dismiss was granted. The minutes say nothing of the court doing so on its own motion. This brings us to the next reason why the order cannot be regarded as proper under section 1385.

(b) *The reasons for the dismissal do not appear in the minutes.*

■ The statute requires that the reasons for dismissal be set forth in the minutes. The oral statements are not the same thing as the court minutes. Minutes and oral pronouncements of the court even if they are reduced to writing by the reporter, are different things. (See, compare, *People* v. *Wilshire Ins. Co.,* 67 Cal.App.3d 521 [136 Cal.Rptr. 693].) This is not a case of resolving a conflict between what was said and what appears in the minutes. The immediate problem which we are considering in this part is whether or not section 1385 supports the order, and whether or not the proper reasons for making the order appear in the minutes as statutorily they must. "If the reasons are not set forth in the minutes, the order dismissing may not be considered a dismissal under section 1385." (*People* v. *Superior Court (Howard),* 69 Cal.2d 491, 503 fn. 7 [72 Cal.Rptr. 330, 446 P.2d 138].) By resort to the reporter's transcripts, particularly that of February 15, we are able to read what the court said orally at the hearing and upon granting of the motion. However, we must observe that the statutory language of Penal Code section 1385 requires that the reasons for the dismissal shall be set forth "in the minutes." That statutory provision is mandatory. (*People* v. *Smith, supra,* 53 Cal.App.3d at p. 657; *People* v. *Orin,* 13 Cal.3d 937 [120 Cal.Rptr. 65, 533 P.2d 193]; *People* v. *Shaffer, supra,* 182 Cal.2d 39.) The statute does not say and the cases have not allowed the interpretation that "the reasons shall appear somewhere in the record." There is a difference between minutes of the court and oral pronouncement. Thus even if they expressed valid reasons which may appear in the record, for example, in the transcript of what is said, if those reasons do not appear in the minutes the mandatory

requirements have not been met. Arguably it would not be unreasonable to look at the record to find out what was said and perhaps to deem the entire record included in the minutes. But we believe it would be inappropriate to do so in a case involving dismissal; and we will not do so here. A dismissal is a drastic and inexorable remedy. (*People* v. *Peinado, supra,* 67 Cal.App.3d Supp. at p. 11; *People* v. *Taylor, supra,* 67 Cal.App.3d 403; *People* v. *Orin, supra,* 13 Cal.3d 937; *People* v. *Smith, supra,* 53 Cal.App.3d 655.)

Minutes have been interpreted to include a filed and signed written memorandum opinion intended to be and in fact filed as part of the court minutes. (*People* v. *Superior Court (Howard), supra,* 69 Cal.2d 491.) But at bench there is no such written memorandum opinion. We presume the Legislature intended strict adherence to the statutory requirements when a court exercises the awesome power of dismissal.

 (c) *Upon the merits of the case, dismissal would have been an abuse of the discretion under Penal Code section 1385.*

The court itself did not say that it was a dismissal under section 1385 nor did it order that the minutes reflect its reasons therefor. Even so it seems appropriate to examine the merits of the underlying reasons for the dismissal. ▓▓▓ The authority upon which the court relies seems to have been its perception that the respondent had been convicted and sentenced for the possession charge and no further punishment probably would or could be imposed. The court intimated that in view of the time used so far, the congestion of the courts, and the probability that not much if any greater punishment would be imposed, all of these items added up in the court's mind to reasons justifying dismissal. As we have indicated several of these items, delay, congestion, or multiple prosecution, individually did not warrant dismissal. Even combined these considerations did not warrant dismissal and the dismissal was error. On the basis of the two informations filed, the two cases did not as a matter of law involve the same act and they did not foreclose additional punishment. The court expressed a concern that the manslaughter charge now posed the problem of multiple *punishment.* The court stated that it was not a case of double or multiple *prosecution.* If that was true, the prosecution should have been permitted to proceed and if then all the facts disclosed but one act or omission, then the court could stay the imposition of punishment on one of the charges. But the court had no inherent authority to dismiss one of the two charges any more than it could have dismissed one of two separate and distinct counts in single information merely because there may have arisen future problems of

double punishment. The prosecution of public offenses is a function to be executed by the district attorney. ■ The decision to prosecute separate offenses belongs exclusively to the prosecuting arm of the executive branch of the government. It is not a judicial function; it is not a choice for the court to make. (*People* v. *Orin, supra,* 13 Cal.3d at p. 947; *People* v. *Smith, supra,* 53 Cal.App.3d 655.)

■ Simply stated in the matter at bench, the admission by a felon that he possessed a firearm, and is therefore guilty of the crime of being a felon in possession of a firearm, does not alone preclude the punishment or the prosecution of that same felon for the commission of a more serious crime. This is so even if such other crime was committed by that felon with that same firearm. By way of illustration, it would be a mockery of justice if the felon could escape a charge of murder simply by pleading guilty to possessing the firearm. (See dissent by Schauer, J., *People* v. *McFarland, supra,* 58 Cal.2d 748.) Although in different clothing, that same specter appears at bench. There was not enough to automatically preclude the right of the People to proceed with the manslaughter charge.

Even if to the problems of prosecution for a related charge and double punishment, we add the problems of delay, and court congestion, where no showing of detriment to a defendant is made, a dismissal under section 1385 is an abuse of discretion. (*People* v. *Kessel,* 61 Cal.App.3d 322 [132 Cal.Rptr. 126]; *People* v. *Orin, supra,* 13 Cal.3d at p. 947.) The People's right to be heard cannot be frustrated to accommodate judicial convenience or because of court congestion. A dismissal for such reasons is an abuse of discretion. (*People* v. *Orin, supra,* 13 Cal.3d 937; *People* v. *Yniquez,* 42 Cal.App.3d Supp. 13 [116 Cal.Rptr. 626].)

The purpose of criminal law is the protection of people against criminal conduct. The attainment of that purpose is initiated through the exercise of the People's right to proceed with criminal prosecution. ■ In weighing whether to dismiss a charge, the interest of the People must be considered as equal in importance to the rights of the accused. (*People* v. *Orin, supra,* 13 Cal.3d 937.) Unarticulated reasons and personal views of what is in the interest of justice or in furtherance of justice are insufficient to justify dismissal under this section. (*People* v. *Peinado, supra,* 67 Cal.App.3d Supp. 1; *People* v. *Harris,* 62 Cal.App.3d 859 [133 Cal.Rptr. 352].)

■ Among some of the facts that a trial court should consider are the weight of the evidence indicative of guilt or innocence, the nature of

the crime involved, whether the defendant is or has been incarcerated awaiting trial, or has been sentenced in a related or similar case, the length of such incarceration, the possibility of harassment, the likelihood of new or additional evidence at trial, the effect on the protection to society in case the defendant should actually be guilty, and the probability of greater incarceration upon conviction of the other offense. (*People* v. *Superior Court (Howard), supra,* 69 Cal.2d 491.) This last item is perhaps another way of saying that the court should consider the possibility that the defendant will escape a proper punishment. The foregoing may not be exclusive and some of them may not be applicable to all cases. But they are examples of what the court should consider. (*People* v. *Superior Court (Howard), supra,* 69 Cal.2d 491; *People* v. *Orin, supra,* 13 Cal.3d 937, 946; *People* v. *Ritchie,* 17 Cal.App.3d 1098 [95 Cal.Rptr. 462]; *People* v. *Fretwell,* 8 Cal.App.3d Supp. 37 [87 Cal.Rptr. 356]; *People* v. *Hunt,* 19 Cal.3d 888, 897 [140 Cal.Rptr. 651, 568 P.2d 376].)

At bench the trial court recited some of these items. It made a conscientious effort in a difficult and close case to weigh the competing interests and concluded that dismissal was proper. But the order was unsupportable under the present facts even if eventually no further punishment could have been imposed.

The evidence at the preliminary hearing in this case seemed to be about all that would be or could be presented at trial. Furthermore, the deputy district attorney in commendable candor indicated that the killing was clearly an accident. The court in stating that it did not think that the defendant would receive much more additional prison time was obviously weighing and considering the fact that the criminality that brought about the accidental death of the victim in his view had been adequately punished by the imprisonment on the possession charge and little more if any benefit would accrue to the community by proceeding to the manslaughter charge.

On the other hand the People are neither legally required to nor do they usually produce all possible evidence at the preliminary hearing. Thus here the record does not affirmatively show that the respondent could not be punished for the separate manslaughter charge as well as for the possession charge. All of the evidence on the manslaughter charge in a trial before a jury was never presented.

Therefore, even if we consider that the court purported to act of its own motion or authority, and that reference may be made to the reporter's transcript to supply the inadequacies of the minutes, still we conclude that on the merits if the court had discretion to dismiss, under the circumstances here, the court abused such discretion.

For the foregoing reasons, the order of dismissal is reversed and the cause remanded to the trial court which is directed to vacate its order of dismissal.

Roth, P. J., and Fleming, J., concurred.